PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GREGORIO ACEVEDO, Defendant and Appellant.

No. 4556. Argued February 11, 1932.—Decided April 13, 1932.

*José D. Rodríguez* for appellant. *R. A. Gómez, Fiscal,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

J. González Mercado filed a complaint against Gregorio Acevedo charging him with petit larceny, as follows:

"That the said defendant on March 15, 1931, and in the ward of Lares, of the municipal judicial district of Lares, within the judicial district of Aguadilla, P. R., then and there unlawfully, wilfully, and maliciously stole from the property of complainant a 'Leghorn' white chicken valued at $3.00, which he traded to his brother Manuel, and which they took to Arecibo, P. R., thus depriving the complainant, the legitimate owner thereof, of his property. This act is contrary to law.—Witnesses: Juan Alvarez and Ramón Alvarez.''

On appeal, the District Court of Aguadilla sentenced the defendant to pay a fine of $10 and in default of such payment to be confined in jail for ten days. Thereupon, he took an appeal to this Court, and in his brief he assigns three errors that he claims were committed by the court in overruling a demurrer, in denying a motion to dismiss the prosecution, and in the admission and weighing of the evidence.

By the first assignment it is maintained that the complaint does not allege facts sufficient to charge the crime of larceny, since it does not aver that the act was committed feloniously (*con intención criminal*).

The applicable law is embodied in section 426 of the Penal Code, which in Spanish reads thus: "Hurto (*larceny*) es el acto de sustraer, con intención criminal, bienes muebles o semovientes, pertenecientes a otra persona." It reads in English: "Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another.''

As the words *felonious stealing* form a part of the definition of the offense, a literal reproduction of them in the complaint would have been the correct thing to do, entirely in accord with the law, the jurisprudence, and good practice.

Section 426 of our Code is equivalent to section 484 of the California Penal Code, and the decisions in that State uphold the following doctrine:

"At common law an indictment for a felony must allege that the act charged was done 'feloniously.' It has long been the rule in California, however, that it is not necessary to use the word in charging a felony where it is not used in the statute defining the offense, and even where the word is used in the statute, its omission is not fatal where equivalent words are used." 14 Cal. Jur. 43.

As supporting the above conclusion there is cited the case of *People* v. *López*, 90 Cal. 569, wherein the Supreme Court of said State said:

"The information upon which the defendant was tried and convicted of the larceny of a horse is claimed to be fatally defective, because it fails to charge that the offense was committed feloniously.

"At common law, simple larceny, whether grand or petit, was a felony, and was defined to be the felonious taking and carrying away of the personal goods of another. The word 'feloniously' was therefore essential to the validity of an indictment for larceny, and it has been uniformly held that this word, when used in a statute or constitution without being defined, should be construed to have the meaning affixed to it by the common law. But our statute has modified the common-law system of pleading and the rule of procedure in many important respects, and prescribed certain simple rules by which alone the sufficiency of such pleading shall be determined. These rules, or such of them as have a direct bearing on the question under consideration, are contained in the following sections of the Penal Code:

"Section 948 provides that 'all the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code.'

"Section 957 provides that 'the words used in an indictment or information are construed in their usual acceptance in common language.'

"Section 958 provides that the 'words used in a statute to define a public offense need not be strictly pursued in the indictment or information, but other words conveying the same meaning may be used.'

"Section 959, subdivision 6, provides that the indictment or information is sufficient if it can be understood therefrom 'that the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in

such a maner as to enable a person of common understanding to know what is intended.'

"Section 960 further provides 'that no . . . information is insufficient . . . by reason of any defect . . . in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits.'

"And section 1258 provides that 'after hearing the appeal, the court must give judgment without regard to technical errors or defects . . . which do not affect the substantial rights of the parties.'

"The defendant is accused, by the information herein, 'with the crime of felony,' which he is charged with having committed by 'stealing, taking and driving away' a horse,. the personal property of the person therein named. No objection was made to the information in the court below, and the question of its sufficiency is raised for the first time by this appeal.

"Larceny is defined by section 484 of the Penal Code to be 'the felonious stealing, taking; carrying, leading, or driving away of the personal property of another.' And subdivision 3 of section 487 of the Penal Code makes the stealing of a horse grand larceny, which is a felony under our statute, and punishable by imprisonment in the state prison. The word 'steal,' as here used, has, as will be hereafter shown, a fixed and well-defined meaning, and is, perhaps, in its common, every-day use and general acceptation, as well understood as any word in the English language. Webster defines it, 'To take and carry away feloniously, as the personal goods of another'; quoting Blackstone. . . .

"To therefore contend that the defendant, who must be presumed to be a person of common understanding, did not know what was intended when he was charged by the information with stealing another man's horse, is simply preposterous.

"Testing the sufficiency of this information by the application of the foregoing rules, we are forced to the conclusion that where the word 'feloniously' is omitted from, and the word 'steal' employed in, the charging part of an information for grand larceny, it will be understood as charging the criminal intent with which the act was committed, and the offense, when so charged in an information or indictment, will be deemed to be substantially charged in the language of the code. And an indictment or information for larceny which contains both or either of those words will be held valid, if found to be sufficient in all other respects. It therefore follows that as the omission of the word 'feloniously' from. the

information herein did not tend to the prejudice of a substantial right of the defendant, the judgment appealed from should be affirmed, and we so advise.'' *People* v. *López,* 90 Cal. 571.

Not only the substantive law on which the Supreme Court of California based its decision is similar to our law, but also all the statutory provisions cited in the opinion are likewise analogous to ours. Sections 948, 957, 958, 959, 960, and 1258 of the California Penal Code are identical with sections 66, 80, 81, 82, 83, and 362 of our Code of Criminal Procedure.

Let us examine now the complaint herein in the light of the law and the jurisprudence cited. It is alleged in the complaint that the defendant ''unlawfully, wilfully and maliciously stole (*sustrajo*) . . . a chicken . . . valued at $3 which he traded . . . thus depriving the complainant, the legitimate owner thereof, of his property.'' The word ''wilfully,'' when applied to the intent with which an act is done, implies a purpose or willingness to commit the act, and the term ''maliciously'' imports ''the doing of a wrongful act, intentionally, without just cause or excuse, a conscious violation of the law to the prejudice of another.'' (Sec. 559, Penal Code.) ''Unlawfully'' means what is contrary to the law, and the Spanish word *''sustrajo''* has the same meaning as the English term ''steal.'' In the Dictionary of the Spanish Language by the Spanish Academy we find *''Substraer* . . . 2. To steal; to rob fraudulently. . . . .''

That being so, a stealing, that is, a larceny has been wilfully committed in violation of the law (which is section 426 of the Penal Code), with the conscious intent to act wrongfully, intentionally, and without just cause or excuse. If to this we add that the complaint further avers that defendant traded the stolen chicken, thus depriving the owner, the complainant, of his property, it must be concluded that the failure to allege expressly the ''felonious'' taking (*intención criminal*) as required by the statute, was cured

by the use of other words which imply that the act charged was committed with criminal intent.

The second error assigned reads as follows:

"*Second error:* The District Court of Aguadilla erred in denying a motion to dismiss the prosecution on the grounds that the complaint averred the commission of a higher offense than that with which the defendant was specifically charged."

It is true that at the trial it was shown that when the complainant filed the complaint he had no positive knowledge that the defendant had committed the offense, but it is also true that the stolen chicken belonged to him, and he was informed of the theft and of the action of defendant by the witnesses mentioned in the complaint, one of which had taken care of the chicken.

The complaint does not aver that the plaintiff had personal knowledge of the facts, nor was such averment necessary, (*People* v. *Nochera,* 23 P.R.R. 561, *People* v. *Maymón,* 24 P.R.R. 56), and the evidence showed that he knew the facts when he filed his complaint, from information which was then considered by him and later by the court as truthful.

We will examine the third error assigned. Complainant was allowed to testify in regard to an admission of guilt made to him by the defendant himself, and the latter contends that such a statement was not admissible, as the rules governing confessions were not followed. This Court has repeatedly held that an admission is not a confession.

It is suggested that the proceeding was defective from the beginning because the complainant took advantage of his position as marshal to prosecute the defendant and in his own office obtained an admission from him.

It appears from the record that the marshal testified as follows:

"Q. Do you have any personal knowledge of this case?
"A. By the spontaneous statements of the defendant.

"Q. What statements did defendant make to you?

"A. He came to my office of his own accord and asked me to withdraw the complaint as he was going to Arecibo with his brother to get back the chicken."

On re-examination he said:

"Yes, sir, he admitted it; at first he denied it but later he confessed, there were several gentlemen I can name; at first he denied it but he said afterwards: 'Here, if you have to go I'll take you; I can take you or else pay you for the chicken.'"

Regarding the action of the complainant marshal, it appears from the record that one of the witnesses for the defendant, Miguel Hernández, testified as follows:

"A. I know, I was in my office, and he sent for me because he was held under arrest, and I came down and saw him, and I asked him: 'What's the matter with you?' and he said: 'Don Juan sent for me and put me here, in jail,' and then I bailed him.

"Q. What did he say to you? What did he say was the cause of his arrest?

"A. Because Juan González had told him that he had stolen a chicken.

"Q. Did he make any other statement?

"A. He told me that Juanito claimed from him payment of three dollars, and that he told him he was not going to pay said money because he had not taken any chicken at all."

It also appears that defendant testified as follows:

"Q. He said here that you went to his office and said that you had stolen a chicken from him.

"A. I was in his office because he sent for me and he told me that he had a complaint charging me with the larceny of a 'leghorn' hen that had been taken away from his house; and then he told me that if I made myself responsible to pay the chicken he would withdraw the complaint, and as I was not guilty, I could not make myself liable for that.

"Q. Did he send you to jail then?

"A. Yes, sir, he sent me to jail."

When a marshal is deprived of any property by theft, he can denounce and prosecute the larceny as any other

citizen could. In such case he has no more rights or privileges than an ordinary citizen. If he goes beyond his rights, or if he abuses or violates the rights of another, he may be guilty of a reprehensible or punishable act, as the case may be, which may be independently complained of, investigated, prosecuted, and punished, if proven. However, the crime of larceny will be tried on its own merits. The court was not bound to accord full credit to the testimony of the defendant and his witness in regard to the conduct of the marshal. If this testimony were true, it would have shown an improper conduct on the part of a court officer, but it would not have affected the validity of the proceeding whereby the defendant was convicted in the district court.

As regards the weight of the evidence, we will say that we do not agree with the claim of appellant that the evidence for the prosecution was insufficient.

Disregarding defendant's admission, which really is not very strong, we still have the testimony of Juan Alvarez and his son, Ramón, both overseers of the complainant's estate where the chicken was kept. They positively charge the defendant with the larceny. They were eyewitnesses whom the court believed and whose testimony we do not consider to be unreasonable nor patently illogical.

It would seem advisable to reproduce the following jurisprudence, as the same is set forth in 17 R.C.L. 22:

"It is essential that the goods taken be owned by some one other than the thief or in the possession of some one having the right thereto. To make the taking larceny, however, it is not necessary that the person from whom property is stolen should have the general ownership, or even that he should have the right of possession. Thus the taking of an animal from an innocent purchaser by a person who originally stole and sold it, the second taking being to conceal the first theft, constitutes larceny. And it is not essential that the thief should know who the owner is. It is sufficient if he knows that the property is not his own and takes it to deprive the true owner of it."

Inasmuch as none of the errors assigned has been committed, the judgment appealed from must be affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.